UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL McCOWN, | ) |
| Plaintiff, | ) ) |
| | ) No. 3:13-cv-0455 |
| v. | ) |
| | ) Judge Sharp |
| NEXANT, INC., | ) |
| Defendant. | ) ) |

## MEMORANDUM

Defendant Nexant, Inc. filed a Motion for Summary Judgment (Docket Entry No. 19), to which Plaintiff Michael McCown filed a response in opposition (Docket Entry No. 28), and Defendant filed a reply (Docket Entry No. 31).

## I. FACTUAL BACKGROUND

Michael McCown ("Plaintiff" or "McCown") graduated with a Bachelor's degree in electronics engineering from the University of DeVry in Chicago, Illinois in 1975, and began his professional career as a field service engineer in Massachusetts.[1] His twenty-five year career in engineering gave him experience in sales, development and implementation of energy conservation measures in small, medium and large commercial and industrial facilities. Plaintiff had extensive experience in the energy-efficiency industry.

---

[1] Unless otherwise noted, the facts are drawn from *Plaintiff's Response to Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, Defendant's Response to Plaintiff's Statement of Undisputed Material Facts* (Docket Entry Nos. 29 and 32), declarations and other related exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

1

Nexant, Inc. ("Defendant" or "Nexant") is an energy-efficient consulting and software firm. It consults with government agencies and companies regarding how to operate more efficiently and also markets and provides software platforms and applications. Nexant opened its Nashville office in 2010 after it was awarded a contract bid with the Tennessee Valley Authority ("TVA") to administer certain TVA programs.

TVA had an incentive program for business and industrial customers to make energy-saving changes for which the customers would receive incentives. In some cases, an audit would be performed by Nexant engineers to evaluate what the cost savings would be. The bulk of Nexant's work for TVA was administering the agency's Energy Right Solutions for Business program ("ERSB"), wherein TVA offered financial discounts to businesses based on the number of kilowatt hours of electricity a business was able to save by implementing energy-efficiency measures. Before a customer would qualify for TVA's ERSB program, a Nexant engineer had to analyze and verify the energy savings. Engineers would do so either from information found on the customer's submitted application itself or by visiting the business. Nexant also performed measurement and verification ("M&V") jobs for TVA, primarily for commercial businesses. A M&V job required Nexant to install meters at a customer's facility to measure the power used by the existing equipment on the site, measure the power used on equipment that had been retrofitted for energy efficiency and compare the two measurements to determine the energy savings.

Nexant was seeking to expand the work it performed for TVA by offering M&V for large-scale industrial customers who bought electricity directly from TVA instead of through a local utility company. To show TVA that it could handle and should be given large M&V projects for major industrial customers, Nexant needed an engineer with substantial experience

2

in the energy-efficiency industry, particularly experience measuring and verifying energy-efficiency at major industrial facilities. Nexant also needed an engineer for the large M&V projects who would be able to successfully deal with customers in the course of leading such projects. Senior Project Manager Jim Giordano (then age 45) interviewed and made the decision to hire Plaintiff effective March 21, 2011, as a Senior Project Engineer.[2] His job responsibilities included working with Nexant customers and its employees to provide technical engineering support and project management for Nexant.

Because Nexant was still trying to obtain the projects for which it had hired Plaintiff, Giordano had Plaintiff support other engineers by handling some projects in their districts. This gave Plaintiff the opportunity to learn about the TVA programs, the required reports, and TVA's expectations. Giordano noted that Plaintiff had an unusually long learning curve in understanding the process, required paperwork, and TVA's expectations, which exceeded that of the other engineers. (Giordano Dep. pp. 21-22). Giordano also observed that Plaintiff repeatedly made the same mistakes instead of learning from previous errors. (*Id.* at 23). For example, Giordano noted that Plaintiff made repetitive careless errors in completing reports and appeared to be disorganized – Plaintiff often lost or deleted key emails. (*Id.* at 24, McCown Dep. Ex. 6, 23). The other engineers[3] also complained about Plaintiff's performance. They relayed to Giordano that they were frustrated working with Plaintiff because they had to tell him the same thing multiple times. (*Id.* at 25).

TVA agreed to let Nexant handle a M&V project for a large industrial customer, Scott Tissue, as a trial run for Nexant receiving more of this type of work. Shortly after his hire,

---

[2] When Plaintiff (then age 58) was hired, Nexant employed four other engineers in the Nashville office, all of whom were assigned to one or more TVA districts as the district engineer responsible for TVA's programs in that geographic area.

[3] The engineers were Alex Lee, Joe Chappel, and Ben Shepard.

Plaintiff began working on the Scott Tissue project, and it took approximately half his time. Plaintiff's responsibilities on the project included hiring a subcontractor to install the meters at the facility; defining the subcontractor's scope of work and instructing the subcontractor on the work to be done; supervising the installation of the metering equipment; communicating effectively with Scott Tissue and TVA about the project, including coordinating with both parties about the site visits required for meter installation; and collecting data from the meters for analysis.

Plaintiff's contact for the Scott Tissue project was Leanne Whitehead, TVA's Major Industrial Products Project Manager. During his work on the project, Nexant received numerous complaints about Plaintiff. (Giordano Dep. pp. 29, 30, 33-34, 36-37). Whitehead complained on a few occasions about Plaintiff's performance and his failure to communicate with her during the course of the project. And Plaintiff was aware that Whitehead was "upset" with him because during the course of one week she had left him "3 voicemail messages . . . about the project not going well and not being on schedule" and that he had not returned her calls. (McCown Dep. Ex. 4). In an e-mail dated July 8, 2011 to Russ Chitwood[4] and Plaintiff, Whitehead stated that "I have been promised by Mike McCown that I would be kept informed of what is happening with this customer, but have yet to hear anything from him about times/dates/nextsteps [*sic*]. I hope this information can be shared with me." (*Id.* Ex. 7). In another e-mail dated July 10, 2011 to Giordano and Plaintiff, Whitehead stated that while Plaintiff promised to keep her "informed on every step" of the project, she had "been left off a series of emails" and she demanded that she "be copied on everything touching this customer." (*Id.* Ex. 5). In response to Whitehead's complaint about not being informed on every step of the Scott Tissue project, in an e-mail dated

---

[4] Russ Chitwood is a Nexant engineer in Colorado who also was working on the project.

4

July 11, 2011 that Plaintiff also received, Giordano assured her that she would be copied on all communications and directed Plaintiff to "please be sure to cc Leanne on all communications related to the SCA project." (*Id.*). Plaintiff, however, did not think it was his place to include Whitehead on all communication regarding the Scott Tissue Project. (McCown Dep. pp. 64-65).[5]

Further, Plaintiff felt that Whitehead was overstepping her authority by directing subcontractors at the Scott Tissue project site, when in fact, Nexant had hired the subcontractor and Plaintiff had already provided instruction to it. (*Id.* at 59-60). He felt that Whitehead did not know the technical specifications of the project well enough to make such specific decisions. (*Id.* at 67). At issue was the placement of electrical meters at the Scott Tissue project site. Whitehead insisted the meters be provided by TVA, but what he did not know was that Whitehead was contacting the subcontractor directly and setting up training sessions to teach the subcontractor how to install and operate TVA meters. Then, on the project site, a meter was installed in the incorrect place. Plaintiff contacted the subcontractor and the meter was reinstalled correctly. (*Id.* at 76-77). Subsequent this, one of the three meters installed on the Scott Tissue project malfunctioned and did not capture data needed for a complete measurement and verification.

Since TVA supplied the meters, it was ultimately their responsibility to calibrate and check the meters to make sure they were working properly before providing them for installation. (*Id.* at 77-80). Plaintiff never addressed his concerns about Whitehead's overreach directly with her because he did not want to drive a wedge between Nexant and TVA. (*Id.* at

---

[5] If Whitehead should have been included in an email, it was Plaintiff's position that she would have been copied on the very first email in the chain by its author, usually the lead engineer on the project. Therefore, when Plaintiff replied "all", if Whitehead was not already included, he did not insert her name into the conversation in case it was information he should not disclose to her. (*Id.*).

68). He spoke to his supervisor, Giordano, about Whitehead's behavior and Giordano did not disagree that she was out of line.[6] (*Id.* at 69).

On July 27, 2011, Whitehead submitted a "report card" reviewing Nexant's work on the project, wherein she gave Nexant very poor marks in all categories: Communication (D), Technical Abilities (F), Safety (F) and Timeliness (D). (McCown Dep., Ex. 7; Giordano Dep. p. 39). TVA ultimately ended Nexant's involvement in the project.

After the Scott Tissue project, Giordano had Plaintiff work as a "floater," assisting other engineers in the office with their TVA projects. These were the same types of projects that he had spent approximately half of his time performing while working on the Scott Tissue M&V. In August 2011, Nexant hired Rob Ezold (then age 47) as Project Manager in Nashville. Ezold supervised the engineers in the Nashville office, including Plaintiff. Plaintiff complained to Ezold about being a floater because, unlike the others, he did not have an assigned territory. Ezold observed that Plaintiff had a difficult time handling several different projects at one time and working across the entire TVA operating area. (Ezold Dep. pp. 51-52, 63).

Therefore, effective September 26, 2011, Ezold decided to split the Kentucky and Middle Tennessee districts served by district engineer Alex Lee and assign responsibility for TVA's programs in Kentucky to Plaintiff as its district engineer.[7] As a district engineer, Plaintiff performed the same duties as when he was a "floater," but he was accountable and ultimately responsible for the quality and timeliness of all engineering-related project work for TVA's incentive program performed in the district. While the work as a district engineer did not require

---

[6] Defendant disagrees with Plaintiff's version of this conversation. *See* (Docket Entry No. 32 at ¶12). Although not relevant to the outcome of the summary judgment motion, the Court conducted a review of Plaintiff's deposition transcript and found Plaintiff actually testified "I honestly don't remember what his response was." (McCown Dep. pp. 68-69).

[7] The Kentucky district was the smallest of all the districts.

6

high-level engineering work, it did require strong organizational skills and the ability to accurately and efficiently handle a large workload of inspections and reports. In October 2011, shortly after Plaintiff was assigned as the district engineer for Kentucky, TVA doubled the incentive offered to its customers through the ERSB program. As a result, there was an explosion in the number of applications for incentives being received, and the project workload for engineers increased.

On December 1, 2011, Ezold e-mailed Plaintiff about the status of several projects in the Kentucky district to which Plaintiff responded that he was not aware he was responsible for all projects in the Kentucky district, including projects already ongoing when he assumed responsibility for it. Ezold informed Plaintiff that if the project was in Kentucky, he was responsible for that project. On December 12, 2011, TVA Program Manager Jeromy Cotten e-mailed Giordano and Ezold about delays in work in the Kentucky district. In his e-mail, Cotten complained that TVA customers in the Kentucky district who wanted to participate in TVA's incentive program were ultimately choosing not to do so because of the long delays between Plaintiff's inspection of their facility and his submittal of a report to TVA.[8]

On December 13, 2011, Jason Krupp of TVA, e-mailed Ezold and Giordano a list of outstanding projects in the Kentucky district and requested a status report of them. All of the projects listed in the e-mail were started by Plaintiff after he became the district engineer for the district. On that same day, Giordano and Ezold made the decision to remove Plaintiff from the district engineer position.

---

[8] Until his deposition, Plaintiff had no knowledge that customers were dropping out of the incentive program because it was taking so long between submitting the application and when they actually received any incentive. (McCown Dep. p. 53).

7

When Plaintiff was removed as district engineer for the Kentucky district, Ezold reassigned Lee as district engineer for the Kentucky district. Ezold discussed his removal as district engineer with Plaintiff and explained that several individuals at TVA had complained about his work. After Plaintiff was removed as district engineer for the Kentucky district, Plaintiff served as a "floater" to support district engineers as needed and directly supported Lee. According to Defendant, Plaintiff continued to perform poorly even in this support role. He struggled to complete projects accurately and timely. For example, on December 22, 2011, Plaintiff had not completed pre-installation documentation for three projects for which he completed the inspections in November, 2011. The work that Plaintiff submitted required a lot of rework by Lee. (Ezold Dep. p. 55). Lee regularly had to return work to Plaintiff for correction, and often had to do so more than once as Plaintiff failed to make all of the corrections the first time.[9] Plaintiff claims, however, Lee would send back work with sometimes meaningless corrections. (McCown Dep. pp. 191-192).

According to Plaintiff, Lee held him to different standards than the other engineers. (*Id.* at 201). For instance, Lee was not allowed to use certain forms the younger engineers were allowed to use. Plaintiff claims to have corroborated this with Joe Chapel, another younger engineer working with Lee. When Plaintiff misplaced a form he thought he needed, Chapel came over to help him. Chapel said, "Oh, I don't use this [form]. I use this one over here." Yet, Lee would never let Plaintiff use the "one over there." (*Id.*).

---

[9] For example, on January 18, 2012, Lee sent several emails to Plaintiff requesting revisions on three separate reports: the M&PA Workbook for Walk2Campus, the MPA Report WB for Instell Wire, and a Post-Installation report for Gap Distribution. Among other things, the revisions included correcting the inspections dates, the inspector, and the install dates. Plaintiff agreed that all of the proposed corrections were appropriate.

On January 31, 2012, Plaintiff's employment was terminated.[10] The decision to terminate Plaintiff was made by Ezold, his supervisor Principal Engineering Manager Sam Mueller, and Giordano in consultation with Nexant's Vice President of Human Resources Christine Harper. They determined that Plaintiff's inability to keep up with and complete work in a timely and accurate matter, his inability to work independently as a senior project engineer and his inability to communicate effectively, showed that he did not have the necessary skills for continued employment. (Ezold Dep. pp. 58-59, 67). To date, no engineer has been hired to replace Plaintiff.[11]

## II. ANALYSIS

Plaintiff, a male in his fifties at the time of his termination, asserts a single claim of age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq*. He alleges Defendant discriminated against him on the basis of age by terminating his employment. Defendant has moved for summary judgment on this claim.

**A. Summary Judgment Standard**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The

---

[10] Another senior project engineer, Rod Hardy (then 48), was terminated the same day as Plaintiff. Hardy was terminated from Nexant due to his poor performance. (Ezold Dep. pp. 61-62). Hardy also had difficulty completing his projects in a timely manner and allowed a very large number of projects to pile up such that customers were wondering when their reports were going to be completed. (*Id.* at 42, 61).
[11] In early January 2012, Nexant hired three low-level engineers in the Nashville office to help with the backlog of work created by the rapid growth of the ERSB program and the poor performance of Plaintiff and Hardy. (Giordano Dec. ¶13; Giordano Dep. pp. 26-27). All three were hired prior to the decision to terminate Plaintiff's employment. (*Id.*).

9

ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Age Discrimination Claim

The Age Discrimination in Employment Act ("ADEA") prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence." *Brooks v. Davey Tree Expert Co.,* 478 Fed. Appx. 934, 940 (6th Cir. 2012). "Regardless of the type of evidence submitted, the burden of persuasion remains on ADEA plaintiffs to demonstrate 'that age was the 'but-for' cause of their employer's adverse

action.' " *Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 811 (6th Cir. 2011). Because Plaintiff does not contend that he has any direct evidence of age discrimination, the Court must consider whether he has presented sufficient circumstantial evidence of discrimination to survive summary judgment.

To establish a *prima facie* case of age discrimination, a plaintiff must show that: "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker." *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 521 (6th Cir. 2008). "The fourth element may be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Tuttle v. Metro. Gov't of Nashville,* 474 F.3d 307, 317 (6th Cir. 2007) (internal quotation marks omitted). "If the plaintiff makes this showing, 'the burden of production [then] shifts to the defendant to articulate a nondiscriminatory reason for its action.' " *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,* 594 F.3d 476, 485 (6th Cir. 2010). "Once a non-discriminatory reason has been offered, the burden of production returns to the plaintiff to show that the defendant's legitimate reasons are merely pretextual, and that he was in fact subjected to the adverse action on the basis of his age. Generally, a plaintiff demonstrates pretext by offering evidence that '(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action.' " *Id.* (quoting *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 545 (6th Cir. 2008)).

It is undisputed that Plaintiff was at least 40 years old and suffered an adverse employment action by being terminated. The Court finds that Plaintiff was qualified for his

position as a senior project manager.[12] Defendant was looking for an engineer with substantial experience in the energy-efficient industry, and Plaintiff brought with him extensive experience in this area. The Court finds, however, that Plaintiff has failed to sufficiently establish a *prima facie* case of age discrimination because he has failed to show that similarly situated non-protected employees were treated more favorably.[13]

In fact, the only evidence Plaintiff has submitted in support of his contention is contained within two paragraphs in his response:

> McCown did not understand why he was reporting to Alex Lee, a junior engineer, and submitting all of his paperwork to Lee for review rather than his supervisor, Ezold. Lee held Plaintiff to different standards; for example, when Plaintiff filled out a form that was accepted by TVA but Lee didn't think it was the proper form, Lee would throw it back at Plaintiff to redo. McCown did not understand why. Lee did not treat other, younger engineers that way. Plaintiff corroborated this with Joe Chapel, another younger engineer working with Lee. Even if Chapel submitted a form that Lee typically did not use, Lee would accept it, whereas Lee would reject McCown's submission of the same form. (McCown Dep. p. 201). Chapel said, I use this form and Lee accepts it. Yet Lee would not allow McCown to submit the same form and would return it to McCown. (*id*.).
>
> Further, Lee was very cold in demeanor toward Plaintiff and was not forthcoming about the details of the Kentucky district which he had once handled. He did not help Plaintiff get up to speed on his new district. Lee did not act this way toward younger engineers in their office; he communicated with them.

(Docket Entry No. 28 at 11).

To be deemed similarly-situated, the individuals with whom Plaintiff seeks comparison must have dealt with the same supervisor, have been subject to the same standards and have

---

[12] Defendant does not dispute that Plaintiff "appeared to have the education and experience to meet Nexant's performance expectations;" rather, it contends he did not "exhibit the leadership skills" or the "organization skills and attention to detail to perform the lower-level work that he was later assigned." (Docket Entry No. 31 at 1). Although Plaintiff was qualified for the job, he ultimately failed to meet Nexant's expectations.

[13] Plaintiff does not make the argument that he was replaced by a younger worker, so the Court need not address that issue.

engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Hughes v. General Motors Corp.*, 212 Fed.Appx. 497, 503 (6th Cir. 2007). Plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered similarly situated. *Hatchett v. Health Care and Retirement Corp. of Am.*, 186 Fed.Appx. 543, 548 (6th Cir. 2006). Rather, Plaintiff and the employee with whom Plaintiff seeks to compare himself must be similar in all of the relevant aspects. *Id.*; *Clayton v. Meijer, Inc.,* 281 F.3d 605, 611 (6th Cir. 2002). This means Plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those outside of the protected class who he alleges were treated more favorably. *Hatchett*, 186 Fed.Appx. at 548.

Without any evidentiary support, Plaintiff makes a couple vague references to "younger engineers" being treated differently than himself by Lee.[14] Plaintiff's unsupported allegations are not evidence, and cannot defeat a motion for summary judgment. *See McNeil v. Sonoco Products Co.,* 519 Fed. Appx. 382, 383 (6th Cir. 2013) (no *prima facie* case of discrimination where the plaintiff failed to proffer any evidence of a similarly situated employee who was treated more favorably and "instead relied—impermissibly—on argument and the allegations in his complaint"); *Walker v. Eyke,* 417 Fed.Appx. 461, 463 (6th Cir. 2011) ("The party opposing a motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Because Plaintiff has failed to submit evidence from which a reasonable jury could conclude that

---

[14] In further support, Plaintiff attempts to offer as evidence a single conversation he had with Chapel. Plaintiff's conversation with Chappel is inadmissible hearsay. Accordingly, the Court will disregard this evidence in deciding the summary judgment motion. *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007).

similarly situated non-protected employees were treated more favorably, he cannot establish a *prima facie* case of age discrimination.

Even assuming that Plaintiff has satisfactorily proven his *prima facie* case, Defendant proffers evidence abundantly showing legitimate non-discriminatory reasons for its actions[15] (significant ongoing performance issues that resulted in his removal as district engineer and ultimately termination of his employment) – and Plaintiff has failed to demonstrate that the proffered reasons were a mere pretext for discrimination. As such, Plaintiff's age discrimination claim cannot survive a motion for summary judgment.

### III. CONCLUSION

For all of the reasons stated, Defendant's Motion for Summary Judgment (Docket Entry No. 19) will be granted and this case will be dismissed with prejudice.

An appropriate Order shall be entered.

*[signature: Kevin H. Sharp]*

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

---

[15] According to Defendant, "Nexant gave Plaintiff every chance to succeed. However, after ten months of employment, he was still repeatedly making basic errors. His performance issues were so severe that the client asked that he be removed from his role." (Docket Entry No. 20 at 22).